H. A. FRIEND & COMPANY,
Plaintiff-Appellant-Cross-Respondent,

v.

PROFESSIONAL STATIONERY, INC.,
f/k/a Friend's Professional Stationery, Inc.
and John Van Der Puy,
Defendants-Respondents-Cross-Appellants.

Court of Appeals

*No. 2005AP1402. Submitted on briefs February 17, 2006.
—Decided June 7, 2006.*

2006 WI App 141

(Also reported in 720 N.W.2d 96.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *John D. Finerty, Jr.*, and *Ted. A. Wisnefski* of *Michael Best & Friedrich LLP* of Milwaukee.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the brief of *James O. Conway* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. SNYDER, P.J. H.A. Friend & Company (Friend) appeals from that portion of a judgment dismissing its claims for statutory civil theft and common law conversion. Professional Stationery, Inc., f/k/a Friend's Professional Stationery, Inc. (collectively referred to as PSI) and John Van Der Puy cross-appeal from that portion of the judgment denying their request for actual costs and attorney fees in connection with the dismissed claims. The parties do not appeal from the summary judgment granted in favor of Friend on its breach of contract claim against PSI.

¶ 2. Friend argues that the circuit court erred when it dismissed all claims that did not sound in contract. It contends that its claims for civil theft under WIS. STAT. § 895.80(1) (2001–04)[1] and for common law conversion against Van Der Puy[2] were sufficiently pled in the complaint and should not be barred by the existence of a contract between the parties. PSI

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Friend's complaint includes a claim of conversion both against PSI and against Van Der Puy individually. On appeal, Friend abandons its statutory civil theft and conversion claims against PSI, which is out of business. Furthermore, PSI admitted on the record that it "failed to turn over the money," was "sorry that happened," and "has no defense to that." Accordingly, Friend's appeal is limited to whether the circuit court properly dismissed the statutory civil theft claim and the common law conversion claim against Van Der Puy.

counters that Friend's noncontract claims are barred by the economic loss doctrine and are frivolous and that the circuit court erred in refusing to award PSI the actual costs and attorney fees it incurred in the defense of those claims. We agree with Friend that the circuit court erred, and we reverse that portion of the judgment dismissing Friend's claims for statutory civil theft and conversion against Van Der Puy. The litigation is ongoing and, consequently, we vacate that portion of the judgment addressing costs and fees. We remand for further proceedings in accordance with this opinion.

## BACKGROUND

¶ 3.  Friend is in the business of producing and selling office papers, legal stationery, and office supplies to the legal profession and others. Friend and PSI entered into a Franchise Agreement on August 8, 1988, whereby Van Der Puy agreed to operate Friend's franchise under the name Friend's Professional Stationery. On February 7, 2003, the parties entered into a Franchise Termination Agreement, which is the subject of this appeal. Friend's Professional Stationery, Inc. changed its name to Professional Stationery Inc. in November 2003. Van Der Puy is the principal shareholder, president, and registered agent of PSI.

¶ 4.  Pursuant to the terms of the termination agreement, Friend purchased the assets, properties, rights and interests that were owned or used or otherwise related to the operation of PSI, except for those specifically excluded by paragraph 4.2 of the termination agreement. In exchange, Friend agreed to extinguish liabilities totaling approximately $517,000, which PSI had accumulated during the course of the franchise relationship. The purchased assets expressly included "all cash on hand and in bank accounts at the time of

the execution of this agreement and all cash equivalents and marketable securities, including savings and money market accounts." The parties do not dispute that at the time of execution of the termination agreement, PSI had approximately $12,678.85 in the company's money market account and $3,724.91 in its business checking account.

¶ 5. After execution of the termination agreement, Van Der Puy did not turn over the checking account or money market funds to Friend, nor did he sign an authorization for Friend to access the accounts. Van Der Puy did not have Friend's permission to write checks against the checking account or to withdraw or transfer funds from the money market account after February 7, 2003. Nonetheless, between February 7 and April 28, 2003, Van Der Puy drew down the money market account balance to zero. Bank records indicate that the money market funds were transferred to the business checking account. By July 31, 2003, the checking account balance was also zero.

¶ 6. Records indicate that during this time Van Der Puy, and in one instance his wife, wrote more than ninety checks against the PSI account. The records suggest that Van Der Puy wrote checks against the PSI account for things such as health insurance, a car wash, purchases at Best Buy, gas, cash, and legal representation.

¶ 7. Friend brought suit claiming breach of contract, civil theft, and conversion. PSI and Van Der Puy moved for dismissal of all but the breach of contract claim for failure to state a claim upon which relief may be granted. Friend moved for partial summary judgment, asking for a determination of liability on all claims and an evidentiary hearing on damages. At the motion hearing, the circuit court granted summary

judgment in favor of Friend on the breach of contract claim, awarding Friend $16,403. The court granted PSI and Van Der Puy's motion to dismiss the remaining claims. Each party was ordered to bear its own fees and costs. This appeal followed.

## DISCUSSION

¶ 8. A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999).[3] "The facts set forth in the complaint must be taken as true and the complaint dismissed only if it appears certain that no relief can be granted under any set of facts that the plaintiffs might prove in support of their allegations." *Northridge Co. v. W.R. Grace Co.*, 162 Wis. 2d 918, 923, 471 N.W.2d 179 (1991). A reviewing court must construe the facts set forth in the complaint and all reasonable inferences that may be drawn from those facts in favor of stating a claim. *Id.* at 923–24. Whether a complaint states a claim for relief is a question of law, which this court

---

[3] We do not employ the summary judgment methodology here. Partial summary judgment was granted to Friend on its breach of contract claim; however, neither PSI nor Van Der Puy appeals from that portion of the judgment. The Order for Judgment states in relevant part:

1. Defendants' Motion to Dismiss the Second, Third and Fourth Claims for Relief is granted;

2. The Plaintiff's Motion for Partial Summary Judgment is granted, in part, and denied, in part; the Plaintiff may take judgment against Professional Stationery, Inc. on the First Claim for Relief in the amount of $16,403[.]

Our review addresses that portion of the judgment dismissing the noncontract claims against Van Der Puy.

reviews de novo. *Id.* at 923. Here, we must determine whether Friend's complaint sufficiently alleges statutory civil theft and conversion against Van Der Puy, and if so, whether the economic loss doctrine or corporate veil nonetheless bars those claims.

¶ 9. We begin with Friend's contention that the circuit court improperly dismissed its claim against Van Der Puy for civil theft under WIS. STAT. § 895.80. The relevant statutory language is as follows:

> **Property damage or loss. (1)** Any person who suffers damage or loss by reason of intentional conduct that occurs on or after November 1, 1995, and that is prohibited under ... [WIS. STAT. §] 943.20 ... has a cause of action against the person who caused the damage or loss.
>
> **(2)** The burden of proof in a civil action under sub. (1) is with the person who suffers damage or loss to prove a violation of ... 943.20 ... by a preponderance of the credible evidence.

Sec. 895.80(1) and (2). To prove conduct in violation of WIS. STAT. § 943.20, the aggrieved party must show that the other party:

> By virtue of his or her office, business or employment ... having possession or custody of money ... of another, intentionally use[d], transfer[ed] ... or retain[ed] possession of such money ... without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner. A refusal to deliver any money ... which [wa]s in his or her possession or custody by virtue of his or her office, business or employment ... upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use within the meaning of this paragraph.

Sec. 943.20(1)(b).

¶ 10.   Friend's complaint alleges that Van Der Puy, as president and an employee of PSI, "intentionally . . . used . . . and retained possession of the Purchased Assets of H.A. Friend . . . without its consent and with the intent to deprive H.A. Friend permanently of possession of such property . . . ." It cites the depletion of the checking account and money market account as specific examples of the theft. Specifically, Friend alleged that after the termination agreement was executed, Van Der Puy issued numerous checks from the checking account, a "purchased asset," without consent "and contrary to the authority of H.A. Friend." This is sufficient to state a claim under WIS. STAT. § 895.80.

¶ 11.   Likewise, we look to see whether the complaint states a claim for conversion. The elements of conversion are:   (1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property. *See Bruner v. Heritage Cos.*, 225 Wis. 2d 728, 736, 593 N.W.2d 814 (Ct. App. 1999). In its conversion claim, Friend alleges that Van Der Puy wrongfully assumed control over certain purchased assets belonging to Friend, acted in reckless or intentional disregard of Friend's rights, and acted without Friend's consent or authorization, all of which seriously interfered with Friend's right to possess the property. The claim incorporated all of the specific factual allegations regarding Van Der Puy's drawing down of the checking account and money market funds after the termination agreement was executed on February 7, 2003. Again, the complaint makes sufficient allegations to state a claim.

¶ 12.  Friend's complaint is not limited to vague, conclusory assertions but instead sets forth specific allegations and ultimate facts that support the claims. This is sufficient to defeat a motion to dismiss. *Cf. Aon Risk Servs., Inc. v. Liebenstein*, 2006 WI App 4, ¶ 6, 289 Wis.2d 127, 710 N.W.2d 175 (Ct. App. 2005) (in order for a complaint to withstand summary judgment, mere conclusory statements that echo legal or statutory standards are not sufficient; rather the complaint must allege the ultimate facts that will support the claim), *abrogated on other grounds by Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 33, No. 2004AP468. Therefore, we hold that Friend has sufficiently presented claims for statutory civil theft and common law conversion in its complaint.

¶ 13.  Our final task is to determine whether relief is nonetheless barred. Taking all of the allegations in the complaint as true, relief may· still be unavailable to Friend.

¶ 14.  Van Der Puy argues that pursuant to the economic loss doctrine, the only remedy available to Friend is through its breach-of-contract claim. The economic loss doctrine is a judicially created doctrine that seeks to preserve the distinction between contract law and tort. *Insurance Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, ¶ 15, 276 Wis. 2d 361, 688 N.W.2d 462. From its inception, the doctrine has been founded on the premise that contract law, and particularly the law of warranty, is better suited than tort law for addressing purely economic loss in the commercial arena. *Id.* The economic loss doctrine states that the purchaser of a product cannot recover from its maker or seller in tort for damages that are solely economic. *See Kailin v. Armstrong*, 2002 WI App 70, ¶ 27,

252 Wis. 2d 676, 643 N.W.2d 132. Thus, Van Der Puy argues, the economic loss doctrine prevents Friend from recovering under any legal theory other than breach of contract.

[9]

¶ 15. While we acknowledge the extensive reach of the economic loss doctrine,[4] we conclude that the dispute presented here is not barred by the economic loss doctrine. First, we observe that there was no defective product or service involved. Our supreme court revisited the economic loss doctrine and reiterated that " '[e]conomic loss' for purposes of the doctrine is defined as 'the loss in a product's value which occurs because the *product is inferior in quality and does not work for the general purposes for which it was manufactured and sold.*' " *Cease Electric*, 276 Wis. 2d 361, 23 (citation omitted) (emphasis added). The checking account and the money market fund are distinguishable from the defective product type of economic loss targeted by the doctrine.

---

[4] The economic loss doctrine is an ever-developing area of law, which has been the subject of several refinements over the past decade.

> Since the initial recognition of the economic loss doctrine, Wisconsin courts have significantly expanded the doctrine's scope and breadth. Wisconsin has eliminated any requirement of contractual privity, disregarded arguments that the doctrine leaves parties with no alternative remedy, applied the doctrine to services incidental to the purchase, rejected "bootstrapping" noneconomic losses of third parties, rejected creating an exception for "sudden and calamitous" occurrences, applied the doctrine to commercial real estate purchases, and applied the doctrine to encompass consumer transactions.

John J. Laubmeier, Comment, *Demystifying Wisconsin's Economic Loss Doctrine,* 2005 WIS. L. REV. 225, 229 (2005) (footnotes omitted).

¶ 16. Second, the public policies underlying the economic loss doctrine are not applicable here. The doctrine is generally based on three policies: (1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to contract and allocate risk; and (3) to encourage the party best situated to assess the risk of economic loss, to assume, allocate, or insure against it. *See Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 35, 262 Wis. 2d 32, 662 N.W.2d 652. Here, the dispute between Friend and Van Der Puy does not concern the protection of a commercial entity's freedom to allocate risk. Van Der Puy did not simply fail to turn over the purchased assets to Friend, which is a risk Friend could have reasonably anticipated and addressed in the contract,[5] but depleted the accounts by spending funds that belonged to Friend.

¶ 17. Finally, our supreme court has clarified that there are occasions where the existence of a contract will not extinguish a tort claim:

> *Predicating duty upon contract.* Ordinarily, a breach of contract is not a tort, *but a contract may create the state of things* which furnishes the occasion of a tort. 57 Am. Jur. 2d *Negligence* sec. 47 makes the above quoted statement and adds: "As a general rule, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner, and a negligent failure to observe any of these conditions is a tort, as well as a breach of

---

[5] The termination agreement includes a provision requiring both PSI and Van Der Puy to "give [Friend] reasonable assistance . . . on matters relating to [PSI's] business, and to give [Friend] reasonable access to records kept by [PSI] and Van Der Puy relating to such business."

contract . . . . *[T]he contract is mere inducement creating the state of things which furnishes the occasion of the tort.*"

*Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 722–23, 329 N.W.2d 411 (1983) (citations omitted). Here, the termination agreement provided the occasion for the tort because it established Friend's ownership of the funds in the checking account and the money market fund. Van Der Puy had a duty, regardless of the existence of the contract, not to retain or use money that belonged to Friend without Friend's consent or authorization. Thus, we conclude that both the facts and the nature of Friend's claims for statutory civil theft and conversion fall outside the reach of the economic loss doctrine.

¶ 18.    Next, Van Der Puy argues that he cannot be sued individually for the acts he committed as a corporate officer. However, WIS. STAT. § 943.20(1)(b) specifically contemplates theft by a corporate officer, stating that "refusal to deliver any money which is in his or her possession or custody by virtue of his or her office, business or employment is prima facie evidence of an intent to convert to his or her own use." Officers are personally responsible for criminal acts committed in the name of the corporation. *State v. Kuhn*, 178 Wis. 2d 428, 432, 504 N.W.2d 405 (Ct. App. 1993). Because the civil theft statute incorporates by reference the criminal equivalent, we do not hesitate to apply the *Kuhn* reasoning to Van Der Puy's conduct here.

¶ 19.    Finally, with regard to Friend's claim of conversion against Van Der Puy personally, it has never been the law of Wisconsin that an individual escapes

liability merely because he or she was acting in the capacity of a corporate officer. *See Hanmer v. DILHR*, 92 Wis. 2d 90, 97, 284 N.W.2d 587 (1979). There are circumstances where the law will deal with the natural person as a separate entity from the corporation. These circumstances include situations where the corporate affairs are "organized, controlled and conducted so that the corporation has no separate existence of its own and is the mere instrumentality of the shareholder and the corporate form is used to evade an obligation, to gain an unjust advantage or to commit an injustice." *Weibke v. Richardson Sons, Inc.*, 83 Wis. 2d 359, 363, 265 N.W.2d 571 (1978). These are matters to be resolved in the trial court.

## CONCLUSION

¶ 20.  Friend's allegations of statutory civil theft and common law conversion are sufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted. Accordingly, Friend's claim for civil theft under Wis. Stat. § 895.80 along with Friend's claim of conversion, both against Van Der Puy individually, are reinstated. Because the result is ongoing litigation, that portion of the judgment denying PSI and Van Der Puy's claim for costs and fees is vacated.

*By the Court.*—Judgment reversed in part, vacated in part and cause remanded with directions.