MIDWESTERN HELICOPTER, LLC,
Plaintiff-Respondent,

v.

William COOLBAUGH, Defendant-Appellant,†

Jon P. ORLOS and Pathfinder Indemnity Company
LTD, Defendants.

Court of Appeals

*No. 2013AP60. Submitted on briefs August 19, 2013.
—Decided September 25, 2013.*

2013 WI App 126

(Also reported in 839 N.W.2d 167.)

† Petition for Review Filed.

211

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott L. Schroeder* of *Scott L. Schroeder, S.C.*, Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert I. DuMez* of *Alia, DuMez, Dunn & McTernan, S.C.*, Kenosha.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. NEUBAUER, P.J. This case is about the conversion of a helicopter when it was allowed to be used beyond the scope authorized by its owner. A managerial employee of Midwestern Helicopters, LLC (Midwestern), allowed a pilot to take a helicopter on a skydiving job after the owner of Midwestern had established a policy that commercial events required his written permission. The pilot ended up hitting a power line and crashing the helicopter. Midwestern sued both the employee and the pilot for conversion and negligence. The theory of the case was that the employee and the pilot took the helicopter without permission from Midwestern and property damage resulted. The case was tried to the court, and the trial court ruled that the employee's unauthorized permission to the pilot to take the helicopter out for the skydiving event, along with the resulting damage, constituted conversion. We agree and affirm.

## FACTS

¶ 2. Midwestern is a small company that bought, sold and repaired helicopters, provided helicopter flight instruction, provided charter helicopter transportation, and arranged with contract pilots to sell helicopter rides at community events. John Parrish is the sole member of Midwestern. At some time during 2008, he decided he wanted to get out of the helicopter business. Among

214

other preparations for sale, Parrish decided to stop doing "commercial event work," because this aspect of the business was losing money. Commercial event work was when an event entity, for example an airshow or a snowmobile festival, would arrange with Midwestern to have a helicopter at its event. The public would be able to purchase helicopter rides at the event. Midwestern would get paid per ticket, depending on how many people it flew.

¶ 3. To communicate his decision regarding commercial events to all those involved with scheduling and/or flying the helicopters, Parrish put a notice on Midwestern's online scheduling program, where pilots would schedule use of helicopters, that said, "No commercial events without written permission from Midwestern Helicopter." Parrish also communicated this new policy to the defendant William Coolbaugh at a June 5, 2008 meeting. Coolbaugh managed the maintenance, flight instruction, and commercial work at Midwestern.

¶ 4. The accident happened on July 4, 2008, when Jon Orlos, a contract pilot for Midwestern, crashed after hitting power lines. Coolbaugh had given Orlos permission to take a Midwestern helicopter to Skydive Chicago, an event at which Orlos would take up skydivers for jumps. Orlos apparently took some passengers on a side sightseeing trip when he flew low enough to hit power lines and crash, severely damaging the helicopter.

¶ 5. Midwestern sued Coolbaugh and Orlos for the loss of the helicopter, alleging conversion and negligence.[1] Orlos did not answer the complaint, and a default judgment was entered against him. The case

[1] Midwestern also sued its insurer, Pathfinder Indemnity, alleging breach of contract for Pathfinder's refusal to cover the loss. Pathfinder prevailed on summary judgment, a decision that is not before the court on appeal.

between Midwestern and Coolbaugh was tried to the court. The court found that Coolbaugh controlled the helicopter, that he gave Orlos permission to take the helicopter without the owner's consent, and that there resulted serious interference with the rights of the owner to possess the helicopter due to the resulting crash and $384,819 in damages. The trial court concluded that Midwestern had proven its case for conversion but that it had not met its burden of proof regarding negligence. Judgment was entered in favor of Midwestern, and Coolbaugh appeals.

## DISCUSSION

### *Coolbaugh's Appeal and Standard of Review*

¶ 6. Coolbaugh raises several issues on appeal. First, Coolbaugh argues that "the trial court erred when it found Coolbaugh guilty of conspiracy to convert the helicopter" and that Midwestern failed to meet its burden of proof for conspiracy. Second, Coolbaugh argues that the trial court "erred when it found that the conversion caused the crash." Finally, Coolbaugh argues that he is not liable because of the superseding cause defense and because public policy precludes liability.

¶ 7. We uphold the trial court's findings of fact unless they are clearly erroneous. Wis. Stat. § 805.17(2) (2011–12).[2] The trial court's findings will be affirmed unless the great weight and clear preponderance of the evidence supports a contrary finding. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). The trial court's decision that the facts amounted

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

to conversion is a question of law which we review de novo. *Kersten v. H.C. Prange Co.*, 186 Wis. 2d 49, 56, 520 N.W.2d 99 (Ct. App. 1994) (whether facts fulfill legal standard is question of law).

## Conspiracy

¶ 8. Regarding Coolbaugh's arguments on conspiracy, Midwestern did not plead conspiracy, and the trial court did not address conspiracy, much less find that there was a conspiracy to convert the helicopter. We need not address this argument further. *See Rock Lake Estates Unit Owners Ass'n v. Township of Lake Mills*, 195 Wis. 2d 348, 419–20 & n.5, 536 N.W.2d 415 (Ct. App. 1995) (we need not address arguments unsupported by references to the record).

## Conversion

¶ 9. Conversion is the intentional, unauthorized control of another's chattel so as to interfere with the owner's possessory rights. A person is liable for conversion when he or she (1) intentionally controls or takes property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property. *H.A. Friend & Co. v. Professional Stationery, Inc.*, 2006 WI App 141, ¶ 11, 294 Wis. 2d 754, 720 N.W.2d 96; *see also* WIS JI—CIVIL 2200. The general rule regarding damages for conversion is that "the plaintiff may recover the value of the property at the time of the conversion plus interest to the date of the trial." *Metropolitan Sav. & Loan Ass'n v. Zuelke's, Inc.*, 46 Wis. 2d 568, 577, 175 N.W.2d 634 (1970) (citation omitted).

¶ 10. The evidence supports the trial court's findings that all three elements of conversion were present. First, the trial court found that Coolbaugh controlled the helicopter. Coolbaugh managed the flight school and maintenance work and oversaw the commercial work. Coolbaugh decided when a pilot could fly a helicopter on his or her own. Coolbaugh had authority to give pilots access to the hangar and the key locker. Coolbaugh himself testified that he gave Orlos permission to take the helicopter to the July 4th event. It is reasonable to infer that Coolbaugh had control of the helicopter if he gave someone else permission to use it.

¶ 11. Second, the trial court found that Coolbaugh did not have authority to give permission to take the helicopter to the skydiving event without the owner's consent. There was conflicting testimony about whether Parrish's ban on commercial events prohibited all events at which a pilot would take up individuals or only those that were "on speculation," in other words, where individuals would pay per ride and no income was guaranteed. There was also conflicting testimony about whether Skydive Chicago was a guaranteed-money event or per participant pay. The trial court found that "Mr. Parrish had made it clear to Mr. Coolbaugh that no helicopter should be used for an event . . . [where] the amount of money being paid was dependent on the unknown number of people that . . . would determine how much money might be paid for the helicopter." The trial court noted that the director of Skydive Chicago testified that he never made any agreement with Midwestern to pay an hourly rate and that there was no guarantee. The trial court found that Coolbaugh "had the helicopter under control and . . . in

his actions in granting Mr. Orlos the right to take it on the Skydive Chicago, he did it without the owner's consent." "[W]hen the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses." *Noll*, 115 Wis. 2d at 644 (citation omitted). The trial court found that Coolbaugh allowed Orlos to take the helicopter without the owner's consent. Implicit in this finding is the conclusion that Coolbaugh understood the scope of the "no commercial events" policy and deliberately violated it. Given the conflicting testimony, we cannot say that this conclusion is clearly erroneous.

■

¶ 12. Finally, the trial court found that there was serious interference with the rights of the owner based on the $384,819 in damage to the helicopter. It is reasonable to infer that this magnitude of damage seriously interfered with the owner's rights to possession. The amount was not disputed at trial. Because the trial court findings of fact were not clearly erroneous, we uphold them on appeal. WIS. STAT. § 805.17(2).

¶ 13. After finding these facts, the trial court made the conclusion of law that the facts constituted conversion under the elements stated above and RESTATEMENT (SECOND) OF TORTS, § 228 (1965), Exceeding Authorized Use (hereinafter Section 228), which states: "One who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is thereby seriously violated." This section "arises most frequently in cases of bailments under contract for a particular use, *but it is equally applicable to a servant, an independent contractor, a gratuitous user, or any*

219

other person permitted to use the chattel." Section 228 cmt. a (emphasis added). Furthermore, it is not necessary that an individual convert the chattel for his own use; if a person takes control in defiance of the owner's rights, it is a conversion, for his or her own sake or the sake of another. *See Mitzner v. Hyman*, 333 S.E.2d 182, 183 (Ga. Ct. App. 1985); *see also State ex rel. Kropf v. Gilbert*, 213 Wis. 196, 211, 251 N.W. 478 (1933).

¶ 14. The trial court's conclusion that the facts of the case constituted conversion is supported by the illustrations to Section 228.

> 4. A rents an automobile to B to drive to X City and return. In violation of the agreement, B drives to Y City, ten miles beyond X City. This is not a conversion.
>
> . . .
>
> 6. The same facts . . ., except that while the automobile is in Y City it is seriously damaged in a collision, with or without negligence on the part of B. This is a conversion.

Section 228 at 446. These examples illustrate that whether an unauthorized exercise of dominion constitutes conversion depends on the severity of interference with the owner's right to control. RESTATEMENT (SECOND) TORTS § 222A cmt. d. at 433 (1965) ("The question is nearly always one of degree, and no fixed line can be drawn.") Here, Coolbaugh knew that Orlos was taking the helicopter to an event that was prohibited by Parrish's policy barring commercial events. Yet Coolbaugh gave Orlos permission to take the helicopter. When Orlos went to the prohibited event and crashed the helicopter, it was a conversion, whether or not Coolbaugh or Orlos was negligent with regard to the accident.

220

## Causation

¶ 15. Coolbaugh argues that the trial court "erred when it found that the conversion caused the crash" and that we review this as a mixed question of fact and law. First, there is no causation element in conversion; the conversion must *result* in interference with the owner's rights to possess the property. *See H.A. Friend & Co.*, 294 Wis. 2d 754, ¶ 11; *see also* WIS JI—CIVIL 2200. Second, the trial court did not find that the conversion caused the crash. The trial court found that "there was a result of serious interference with the rights of the owner to possess the property."

## Negligence

¶ 16. The trial court concluded that Midwestern had not met its burden of proof on negligence. Coolbaugh, understandably, does not challenge this conclusion. Instead, Coolbaugh argues that two defenses applicable in negligence cases—public policy and superseding cause—should preclude liability in this conversion case. Coolbaugh cites no authority applying either rationale in a conversion case. Coolbaugh does not even argue why these doctrines should apply to conversion as they do to negligence, simply stating: "The same analysis for conversion applies here to Coolbaugh." We decline to import these negligence defenses into this conversion case, in which the trial court rejected the negligence claim. *See Fritz v. McGrath*, 146 Wis. 2d 681, 686, 431 N.W.2d 751 (Ct. App. 1988) (we need not consider arguments broadly stated but not specifically argued).

## CONCLUSION

¶ 17. The trial court's findings of facts are supported by the evidence, and its conclusion that the facts fulfilled the legal standard for conversion is not an error of law. We therefore affirm the judgment.

*By the Court.*—Judgment affirmed.