COURT OF APPEALS
DECISION
DATED AND FILED

September 21, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP45**

Cir. Ct. No.  **2019SC316**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

ELAND FISHEREE LLC, JAMES STOLTZ, CYNTHIA VANLANEN AND DENISE LARSON,

   PLAINTIFFS-RESPONDENTS,

V.

JENNIFER BRENNAN, ALLEN P. OSTERBRINK AND ELAND FISHEREE,

   DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Shawano County: JAMES R. HABECK, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

¶1    HRUZ, J.[1]  Jennifer Brennan, Allen Osterbrink, and Eland Fisheree (collectively, the defendants) appeal from a $10,690.90 small claims judgment in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

favor of Eland Fisheree LLC (the LLC), James Stoltz, Cynthia VanLanen, and Denise Larson (collectively with the LLC, the plaintiffs).[2] This dispute arose after the plaintiffs took control of an informal organization that coordinated an annual fishing event in Eland, Wisconsin.[3] After taking control, the plaintiffs filed this small claims action to recover funds from the former leaders of the informal group—the defendants. The circuit court found that the plaintiffs successfully created a successor organization to coordinate the fishing event, and that they were entitled to their requested damages along with costs.

¶2    On appeal, the defendants argue that the circuit court lacked sufficient evidence to find the defendants liable; that it erroneously exercised its discretion in denying their motion to reconsider; and that we should reverse in the interest of justice. We conclude that sufficient evidence existed for the court to find the defendants liable; however, the evidence only supported an award of $9,960.99 in damages and costs. We also conclude that the court did not erroneously exercise its discretion in effectively denying the motion to reconsider, nor is discretionary reversal appropriate in this case. We therefore affirm the

---

[2] We generally prefer to reference parties by name, rather than by party designation—just as the parties are required to do in their briefs pursuant to WIS. STAT. RULE 809.19(1)(i). For purposes of this appeal, however, the party designations provide the most clarity.

[3] For additional clarity, we refer to this informal organization as "the informal group." As we later explain, the circuit court reasonably found that the plaintiffs successfully created a successor organization to this informal group when they elected new leadership and created the LLC. The court never found that the informal group split into two groups. The informal group and the LLC are thus one and the same, but each represents a different period of time in the group's history.

Additionally, although we use the word "informal" to describe the informal group, we note that the informal group did obtain an employer identification number from the Internal Revenue Service. The parties also appear to agree that the informal group operated under the Uniform Unincorporated Nonprofit Association Act, WIS. STAT. ch. 184.

judgment in part, reverse in part, and remand for the court to modify the judgment to $9,960.99 in damages and costs.

## BACKGROUND

¶3   The Eland Fisheree is a long-running, annual fishing event promoting the sport of fishing in the community. In 2015, the informal group assumed responsibility for organizing the event, and Allen Osterbrink and Jennifer Brennan were informally appointed as the president and treasurer of the group, respectively. Some of the informal group's pre-event responsibilities included seeking donations, buying food and prizes, obtaining permits to stock a local pond with fish, and advertising the event. As treasurer, Brennan considered herself "the grunt worker," purchasing most of the supplies throughout the year and storing those supplies in her home.

¶4   Sometime around 2017, some members of the informal group began requesting financial reports and receipts from Brennan and Osterbrink. One member in particular, Cynthia VanLanen, sought records because she wanted to be transparent with donors regarding how donations were spent. At different times, Brennan provided receipts, a bank statement, and a spreadsheet to VanLanen.

¶5   In early 2019, the informal group struggled to schedule a meeting time that accommodated all of the members interested in discussing the 2019 event. VanLanen eventually took it upon herself to schedule the meeting, and she posted on her Facebook page that the informal group's meeting was scheduled for February 26, 2019, to elect officers, review "financials," and consider ideas for the 2019 event. Approximately nineteen people attended the February 26 meeting, but Brennan and Osterbrink were absent. Those in attendance, with the exception of two people, voted to elect new officers to lead the informal group. James Stoltz

and Denise Larson were elected to serve as the president and treasurer of the informal group, respectively. Some attendees also expressed a desire to form an LLC with bylaws. Larson later filed paperwork to form the LLC.

¶6 Following the February 26, 2019 meeting, Stoltz and Larson went to Banner Bank and requested that the informal group's existing bank account be updated to include them as signatories. After producing documentation of the February 26 vote, the bank complied with their request. The next day, Osterbrink and Brennan went to Banner Bank and asked to close the informal group's account. Brennan told the bank that "the [February 26] meeting was illegal." The bank eventually agreed to close the account and to issue a money order for $7,867.43 to "Eland Fisheree and Denise Larson, Treasurer." The money order was then given to Brennan and Osterbrink.

¶7 After learning about the money order, the LLC demanded that the defendants return the money order to Banner Bank. When the defendants failed to comply, the plaintiffs filed this small claims action. In addition to seeking the bank account funds, the plaintiffs also sought reimbursement for other "accounting discrepancies." The plaintiffs alleged that the defendants converted funds belonging to the LLC and that the defendants were unjustly enriched by retaining funds donated for the Eland Fisheree event.

¶8 The case proceeded to a bench trial on September 26, 2019. The plaintiffs called four witnesses: a Banner Bank employee, Osterbrink, Brennan and VanLanen. The defendants subsequently cross-examined the bank employee and VanLanen, but they did not have an opportunity to question Brennan or Osterbrink. During the defendants' cross-examination of VanLanen, the circuit court stopped the defendants' attorney, stating that "[w]e're going to have to close

4

this out soon …. We're at 4:32 …." The defendants' attorney responded, "I don't think that we're going to get through my witnesses today." The court then replied that they were not going to have another day of trial, but that the parties may submit "offers of proof" that demonstrate what "could be shown at trial in terms of facts." The court set a briefing schedule for the parties to submit their arguments and stated that it would issue a written decision. After the court explained the posttrial procedures, the defendants' attorney stated, "Sounds good. Thank you."

¶9 The parties submitted affidavits, additional exhibits, and briefs with their respective arguments. The circuit court then issued a written decision granting judgment in favor of the plaintiffs. The court found that the informal group "never had any type of bylaws or organizational document" and that "[w]hile there was some form of historical precedent, … there w[ere] no organizational rules that were violated" because "there were no rules." It further found that the plaintiffs "successfully created a successor organization" after conducting "a majority vote of those present at the [February 26, 2019] meeting, which is in no way contrary to the methodology used previously, based upon testimony." The court adopted the plaintiffs' calculation of damages and awarded $10,000 in damages and $690.90 in costs.[4] The defendants filed a motion to

---

[4] The circuit court specifically adopted the damages "shown on page 4" of the plaintiffs' letter brief. This letter brief, however, is not a part of the appellate record. As the appellants in this case, the defendants were responsible for ensuring that the record is complete, and we therefore assume that the missing letter brief supports the court's decision. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993). We nevertheless believe that the awarded damages are accurately reflected on "Exhibit C" to Denise Larson's affidavit, which is in the record. The plaintiffs calculated their damages to be $13,873.70, comprised of: (1) $7,867.43 for the bank account funds; (2) $4,315.37 for unauthorized cash withdrawals and purchases; (3) $1,000 for cash in a safe; and (4) $690.90 in various fees. The defendants do not challenge the fees on appeal. This calculation of damages is also consistent with the defendants' arguments on appeal.

reconsider, but the court never ruled on that motion. The defendants now appeal. Additional facts are provided below.

## DISCUSSION

¶10 As an initial matter, we address the defendants' reoccurring argument throughout their appellate briefs that the affidavits and documents submitted as "offers of proof" did not constitute admissible evidence. The defendants argue that the circuit court never admitted these affidavits into evidence, that the offers of proof show "issues of fact," and that the case was never fully tried. In response, the plaintiffs argue that the defendants waived any claim regarding the court's posttrial procedures for accepting evidence. In particular, the plaintiffs point out that the defendants did not object to the court's procedures until after the court granted judgment in favor of the plaintiffs.

¶11 Although the defendants continue to argue in their reply brief that the circuit court could not rely on the affidavits as evidence, the defendants do not respond to the plaintiffs' waiver argument. The defendants therefore concede this argument. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979). In any event, we agree that the defendants waived any claim regarding the court's posttrial procedures for accepting additional evidence, including by affidavit, and its reliance on such evidence. To avoid waiver, litigants must object contemporaneously with the purported error at trial. WIS. STAT. § 805.11(1). There are no exceptions to this requirement. Sec. 805.11(3).

¶12 The defendants did not object to the circuit court's decision to end the trial testimony, nor did they object to the court's request that the parties submit offers of proof demonstrating what further evidence could be shown. In fact, they

6

acquiesced. Upon learning of the court's proposed posttrial procedures, the defendants' attorney simply stated, "Sounds good. Thank you." The defendants first took issue with these procedures in their motion to reconsider. But by failing to object when the court explained the posttrial procedures and before the court entered judgment, the defendants waived any claim regarding these procedures.

## I. Sufficiency of the evidence

¶13   The defendants begin by arguing that the evidence did not support the circuit court's findings that they converted funds or that they were unjustly enriched. The sufficiency of evidence is a question of law that we review de novo. *Lemke v. Lemke*, 2012 WI App 96, ¶28, 343 Wis. 2d 748, 820 N.W.2d 470. In the instant case, the court did not specifically discuss how its factual findings related to the elements of conversion or unjust enrichment. Nevertheless, when the record does not include a specific finding on an issue, we will assume that the circuit court resolved the issue in a manner that supports the final judgment or order. *See Freund v. Nasonville Dairy LLC*, 2019 WI App 55, ¶39, 389 Wis. 2d 35, 934 N.W.2d 913. Furthermore, we will not set aside a circuit court's findings of fact unless they are clearly erroneous, and we must give "due regard" to the court's opportunity "to judge the credibility of the witnesses." WIS. STAT. § 805.17(2). If more than one inference can be drawn from the evidence, we accept the inference drawn by the circuit court sitting as the fact finder. *Freund*, 389 Wis. 2d 35, ¶41.

¶14   The defendants assert that the bank account funds are "the heart of this case." They do not advance any argument, however, that the plaintiffs were not otherwise entitled to those funds. Indeed, it is unclear whether the defendants even intended to challenge on appeal the circuit court's finding regarding the bank

account funds. We nevertheless address the issue in the interest of being complete and because the plaintiffs briefed the issue.

¶15 The circuit court found that the plaintiffs "successfully created a successor organization" after conducting "a majority vote of those present at the [February 26, 2019] meeting, which is in no way contrary to the methodology used previously, based upon testimony." Although the court recognized some historical precedent for the informal group's operations, the court found that the plaintiffs did not violate any organizational rules because no rules existed.

¶16 The circuit court's findings in this regard are not clearly erroneous. Brennan testified at trial that the informal group had no policies, procedures, bylaws or operating agreements. Although she testified that the informal group usually made phone calls to give notice of meetings, she agreed that no policy or procedure existed regarding how notice must be given. VanLanen testified that she scheduled a meeting for the informal group on February 26, 2019, posting notices on her Facebook page and in public spaces. VanLanen further testified that the people who attended the February 26 meeting constituted a majority of the informal group's members and that those members elected new officers and decided to create the LLC during that meeting. Finally, Brennan agreed during her testimony that the informal group's actions were generally dictated by the majority consent of the members.

¶17 The evidence therefore supported the circuit court's findings that VanLanen provided sufficient notice to schedule a meeting and hold an election; that the members of the informal group elected new leadership; and that the members agreed to formalize the informal group by creating the LLC. These findings also support the court's ultimate finding that the plaintiffs "successfully

created a successor organization"—i.e., the informal group became the LLC, with Stoltz and Larson as officers. As the successor organization, the LLC was thus the rightful owner of all property and claims that previously belonged to the informal group, including funds in the informal group's existing account at Banner Bank.

¶18 After finding that the Banner Bank funds belonged to the LLC, the circuit court had an evidentiary basis to determine that the defendants converted those funds. A party is liable for conversion when he or she (1) intentionally controls or takes property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property. *Midwestern Helicopter, LLC v. Coolbaugh*, 2013 WI App 126, ¶9, 351 Wis. 2d 211, 839 N.W.2d 167.

¶19 Sufficient evidence existed to support each of these elements. First, it is undisputed that the defendants intentionally controlled $7,867.43 that belonged to the LLC by obtaining the money order from Banner Bank. Second, the LLC updated the signatories on the Banner Bank account before the defendants obtained the money order, and it then demanded the return of the funds after learning of the money order, which supports a finding that the LLC did not consent to the defendants' control over the funds. Finally, the evidence supported a finding that the defendants' control over the $7,867.43 resulted in a serious interference with the LLC's right to possess the funds because the LLC was unable to use the funds for the 2019 Eland Fisheree event.

¶20 The defendants may have believed that the February 26, 2019 meeting was illegal and that they were rightfully entitled to the funds. Conversion, however, does not require proof of "wrongful intent or knowledge that what is being taken rightfully belongs to another." *See Bruner v. Heritage*

*Cos.*, 225 Wis. 2d 728, 736-37, 593 N.W.2d 814 (Ct. App. 1999). Thus, sufficient evidence existed for the circuit court to conclude that the defendants converted $7,867.43 that belonged to the LLC.

¶21 The defendants next argue that the plaintiffs failed to produce sufficient evidence that Brennan retained $1,000 from the informal group in her personal safe. Specifically, the defendants take issue with Larson's statement in her affidavit that the defendants held what she was told was approximately $1,000 in a private safe. The defendants argue that this affidavit is not proper evidence and that Larson failed to provide any foundation for her statement, other than hearsay from an unknown source. We need not decide whether the circuit court could rely on Larson's assertion, however, because sufficient trial testimony supports the court's finding that Brennan retained $1,000 from the informal group.

¶22 Brennan admitted at trial that she had previously kept some of the informal group's cash in her personal safe. Although she testified that she put all of that cash back into the informal group between 2017 and 2018, the circuit court was entitled to find her testimony incredible. *See* WIS. STAT. § 805.17(2). Osterbrink testified that Brennan held cash belonging to the informal group in a safe at her home. Despite being uncertain how much cash was in the safe, he did not reject the notion that it could be $1,000. Osterbrink also agreed that there were still funds belonging to the informal group in a private safe on the day of trial. Finally, VanLanen testified unequivocally on cross-examination that Brennan kept $1,000 cash from the informal group in her home safe. The defendants' attorney did not ask any follow-up questions regarding the basis for VanLanen's knowledge.

¶23 The record thus supports the circuit court's finding that Brennan retained $1,000 from the informal group in her personal safe. Although Brennan's testimony conflicted with this finding, the court stated in its decision that to the extent contrary testimony had been submitted, the court's findings of fact reflected its findings as to credibility.

¶24 Sufficient evidence also existed for the circuit court to conclude that Brennan would be unjustly enriched if permitted to keep the $1,000. A party is liable for unjust enrichment when: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. *Buckett v. Jante*, 2009 WI App 55, ¶10, 316 Wis. 2d 804, 767 N.W.2d 376. First, the evidence supported the court's finding that the LLC, as the successor organization, conferred a benefit upon Brennan because it allowed her, as the treasurer, to keep $1,000 on hand to make purchases for the group. Second, the evidence showed that Brennan knew of this benefit because she knew the money belonged to the informal group and because she knew the money was to be used for the benefit of the group. Third, the evidence supported the finding that Brennan retained the benefit of the $1,000 under inequitable circumstances because Brennan ceased acting as the treasurer of the informal group when its members elected a new treasurer, and Brennan refused to turn over the funds to the new treasurer.

¶25 Finally, the defendants argue insufficient evidence existed for the circuit court to award $4,315.37 in damages for unauthorized cash withdrawals and purchases. The defendants again contend that Larson's affidavit is not proper evidence, and therefore the court could not rely on her statements contained

therein. The defendants further argue that no other evidence supports a finding that they made unauthorized cash withdrawals and purchases in the amount of $4,315.37. Although the defendants waived any claim that affidavits do not constitute evidence, we agree that the record contains insufficient evidence to hold the defendants liable for unauthorized cash withdrawals and purchases in the amount of $4,315.37. Rather, the record only supports $402.66 in such damages.[5]

¶26    Larson averred in her affidavit that attached bank statements showed "unauthorized cash withdrawals and purchases," totaling $4,315.37. The plaintiffs provided minimal explanation, however, regarding where that money went or whom that money benefited. At trial, plaintiffs' Exhibit 8 was a document prepared by the defendants, explaining many of the alleged unauthorized cash withdrawals and purchases. That document asserted that $402.66 of the informal group's funds had no corresponding receipts and was therefore unaccounted. In reference to Exhibit 8, Brennan admitted that $402.66 was unaccounted for, but the plaintiffs did not question her further regarding the cash withdrawals and purchases discussed therein.

¶27    VanLanen later testified that she was not aware of any purchases that Brennan made that were unacceptable from her point of view. Nor could she identify any specific instance in which Brennan used the informal group's funds to enrich herself. Although VanLanen testified, and Brennan admitted, that Brennan

_____

[5] One could argue—though the defendants have not—that the "safe money" damages and the damages for unauthorized cash withdrawals overlap—i.e., that cash in the safe came from the unauthorized cash withdrawals. The circuit court must have found that these damages were indeed separate because it adopted the plaintiffs' calculation that separated these damages. Because the defendants have not raised any argument regarding this finding, we need not consider it further. *See Madely v. RadioShack Corp.*, 2007 WI App 244, ¶22 n.8, 306 Wis. 2d 312, 742 N.W.2d 559 (we need not consider undeveloped arguments).

occasionally purchased soda for her personal use with the informal group's funds, VanLanen was unsure how much Brennan spent on soda.

¶28    Sufficient evidence existed for the circuit court to conclude that the defendants converted $402.66.  The court could reasonably find that: (1) the defendants had control over those funds when they made cash withdrawals and purchases; (2) the informal group did not consent to these cash withdrawals and purchases because they were "unauthorized;" and (3) the defendants' inability to account for the $402.66 suggests that the defendants' control over this sum substantially interfered with the informal group's right to possess such funds.  *See Midwestern Helicopter*, 351 Wis. 2d 211, ¶9.

¶29    Brennan asserted in an affidavit after trial that she thought she used "the $400" to purchase printer ink for the informal group.  The circuit court apparently found this assertion to be incredible, however, and it had a basis to do so.  Brennan could not provide an explanation for the unaccounted $402.66 during her trial testimony.  Moreover, Brennan admitted to using the informal group's funds, without the group's approval, to occasionally purchase soda for herself.  Although occasional soda purchases may not add up to $402.66, they do show that Brennan was willing to use the informal group's funds for her own benefit.

¶30    Beyond the unaccounted $402.66, however, the record on appeal contains no evidence that the allegedly unauthorized cash withdrawals or purchases were not otherwise available to the informal group or were not used for the benefit of the group.  The plaintiffs relied on Exhibit 8 to show that there were unaccounted for funds, but the plaintiffs failed to rebut the defendants' explanations regarding the other unauthorized cash withdrawals and purchases.  Without such evidence, the plaintiffs failed to establish that the defendants

retained any benefit above $402.66 from the informal group—much less under inequitable circumstances. *See **Buckett***, 316 Wis. 2d 804, ¶10. Similarly, the plaintiffs failed to show that the defendants' control of the funds resulted in a serious interference with the informal group's right to possess the group's property beyond the $402.66 in unaccounted funds. *See **Midwestern Helicopter***, 351 Wis. 2d 211, ¶9. The plaintiffs thus failed to prove damages above $402.66 to the requisite reasonable certainty. *See **Novo Industrial Corp. v. Nissen***, 30 Wis. 2d 123, 131, 140 N.W.2d 280 (1966).

¶31    In sum, sufficient evidence existed to support the circuit court's conclusions that: (1) the defendants converted $7,867.43 from the LLC's bank account; (2) the defendants were unjustly enriched by $1,000 kept in Brennan's personal safe; and (3) the defendants converted $402.66 when they made unauthorized cash withdrawals and purchases. In addition to the $690.90 in fees that the defendants do not challenge on appeal, the plaintiffs' damages and costs total $9,960.99. We therefore affirm the judgment in part, reverse in part, and remand for the circuit court to reduce the judgment by $729.91.

## II. *The defendants' motion to reconsider*

¶32    The defendants next argue that the circuit court erred when it denied their motion to reconsider.[6] We review a circuit court's decision on a motion for

---

[6] The plaintiffs contend that the circuit court never denied the defendants' motion to reconsider because the court lost jurisdiction after the defendants filed their notice of appeal. We disagree. Regardless of whether an appeal is pending, a circuit court may act on a motion for reconsideration filed under WIS. STAT. § 805.17(3). *See* WIS. STAT. § 808.075(1). Here, the court had the power to act on the defendants' motion to reconsider after the notice of appeal was filed. Because the court did not issue a decision on the motion within ninety days, the motion is considered denied. *See* § 805.17(3).

reconsideration under the erroneous exercise of discretion standard. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853.

¶33 Citing WIS. STAT. § 799.215, the defendants contend that the circuit court failed to apply the proper legal standards because it failed to make specific findings of fact regarding conversion and unjust enrichment. Section 799.215 provides that "[u]pon a trial of an issue of fact by the court, its decision … shall state separately the facts found and the conclusions of law thereon; and judgment shall be entered accordingly."

¶34 Even if we assume that the circuit court failed to comply with WIS. STAT. § 799.215, the court did not commit reversible error by failing to do so in this case. In *Hochgurtel v. San Felippo*, 78 Wis. 2d 70, 253 N.W.2d 526 (1977), our supreme court discussed WIS. STAT. § 270.33 (1973)—a statute that contained identical language to the relevant language at issue in § 799.215. *See Hochgurtel*, 78 Wis. 2d at 84-85 n.6. The court explained that the statute protects the rights of the litigants and facilitates review of the record by an appellate court. *Id.* at 85. The court recognized, however, that "[t]he failure to state separate findings of fact and conclusions of law is not necessarily reversible error." *Id.* at 86. The court concluded that it could "affirm a judgment if a review of the record demonstrates that the trial court reached a result which the evidence would sustain if there was a specific finding." *Id.*

¶35 As we discussed above, the record here contains sufficient evidence to support the conclusion that the defendants are liable for $9,960.99 in damages. Additional and more specific findings by the circuit court may have aided in our review of this case, but the court's failure to make such findings is not reversible

error alone. We therefore cannot conclude that the court erroneously exercised its discretion in denying the defendants' motion to reconsider.

*III. New trial in the interest of justice*

¶36 Finally, the defendants argue that we should use our discretionary reversal power to reverse the circuit court's judgment and grant a new trial in the interest of justice. We may exercise our discretionary reversal power where it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried. WIS. STAT. § 752.35. The defendants summarily contend that the real controversy has not fully been tried and that a probable miscarriage of justice has occurred because the court did not allow them to present evidence. The defendants also contend in their reply brief that the plaintiffs did not address, and have therefore conceded, this argument.

¶37 We are not persuaded that the plaintiffs conceded this argument. First, the defendants' two-paragraph "interest of justice" argument was couched within their argument regarding the sufficiency of the evidence; it was not addressed separately in their appellate brief and communicated to the plaintiffs as a separate issue on appeal. Second, the plaintiffs' waiver argument directly addressed the basis for the defendants' interest of justice argument—i.e., that the circuit court denied the defendants an opportunity to present evidence.

¶38 Regardless, whether a party has conceded an argument on appeal is a decision that lies within our discretion. *See Charolais*, 90 Wis. 2d at 108-09. Here, we decline to deem the defendants' interest of justice argument conceded. We exercise our discretionary reversal power only in exceptional cases, and this is not such an exceptional case. *See State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258. As discussed above, the defendants waived any

argument regarding their ability to fully try the matter. Further, the record shows that the real controversy has been fully tried because the circuit court had the opportunity to examine the defendants' affidavits and supporting documents that bear on the significant issues in this case. *See State v. Maloney*, 2006 WI 15, ¶14 n.4, 288 Wis. 2d 551, 709 N.W.2d 436. Finally, the defendants have not shown a probable miscarriage of justice because they have failed to establish "a substantial probability of a different result on retrial." *See id.* In short, discretionary reversal is not appropriate in this case.

¶39 No costs are awarded to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.