STATE, Appellant, vs. MURRAY, Respondent.

*April 5—May 8, 1928.*

*Abandonment: Of use of property: What constitutes: Building codes: Temporary discontinuance of existing use.*

1. In order to constitute an abandonment of property there must be a relinquishment coupled with an intent to part with it permanently.   p. 659.
2. A building code promulgated by the industrial commission establishing the requirements for the structure of a garage building is *held* inapplicable to a building used as a garage before the enactment of the code, notwithstanding the discontinuance of such use during the World War while the owner served in the army, and the fact that on his return his repossession for garage purposes was postponed, due to consideration for the convenience of the city, which was using the building, since there was no "abandonment" of the use of the building for the purposes of a garage.   p. 659.

APPEAL from a judgment of the circuit court for Juneau county: E. W. CROSBY, Circuit Judge.   *Affirmed.*

Action by the State against the defendant *James Murray* for the recovery of a statutory penalty for the use of a building as a garage, the structure of which building did not conform to the requirements of the building code for buildings devoted to garage purposes.   From a judgment of nonsuit the State appeals.

For the appellant there was a brief by the *Attorney General* and *Michael J. Dunn, Jr.,* and *T. L. McIntosh,* assistant attorneys general, and oral argument by *Mr. Dunn.*

*H. J. Mortensen* of New Lisbon, for the respondent.

OWEN, J.   The building was erected by one Onsager, and used by him as a garage until he was drafted into the United States army in February, 1918.   In anticipation of the fact that he would be drafted he closed out his garage business, and left the lower part of the building in which the garage business was conducted, vacant, when he entered the army.   During the period of his army service, and without

his knowledge or consent, his parents permitted the city of Mauston to occupy the vacant premises as a fire hall and meeting place for the city council. Upon his return from the army in July, 1919, he found the premises so occupied. He immediately made arrangements to resume the garage business, but in view of the fact that the city was in the occupancy of his own garage, he temporarily rented other quarters, which he occupied until April, 1921, when it was arranged that the city should occupy the garage which he was then renting, and he moved into his own garage. In May, 1922, he sold the premises to the defendant, who continued to conduct a garage therein.

The building code was promulgated by the industrial commission subsequent to the erection of the building by Onsager. By its own terms it applied to new buildings and "as far as possible to all buildings which are to be devoted to a new use for which the requirements of this code are in any way more stringent than the requirements covering the previous use of the building." It is conceded that the continued use of this building as a garage does not incur the penalty of the building code unless its use as such after possession was resumed by Onsager in April, 1919, and 1922 constituted a new use. To sustain the affirmative of this proposition the State maintains that the occupancy of the building by the city from July, 1919, to April, 1921, by and with the knowledge and consent of the owner, constituted an abandonment of the use of the building for the purposes of a garage.

There is no question that the building is appropriate for use as a garage, that it was built for that purpose, that it was occupied by Onsager for that purpose until he was inducted into the army, that immediately upon his return from the army he resumed the garage business, and that he installed himself in another building for the sole reason that the city was in the occupancy of his own building. It may be conceded that Onsager could have enforced his legal

right to the possession of the building, which he did not do. He testified that he spoke to various city officials about possession of the building, but that it did not seem convenient for them to surrender possession of the building at that time, and that he was restrained from enforcing his legal rights in the premises out of consideration for the necessities of the city. It is true that his testimony in this respect is not corroborated by any of the city officials; but, however that may be, we consider it quite immaterial. We do not challenge the State's concession that to constitute the reoccupancy of the garage a new use of the building, abandonment of its original use must be shown. It is well settled that in order to constitute an abandonment of property there must be a relinquishment coupled with an intent to part with it permanently. 1 Ruling Case Law, 1–5; 1 Cyc. p. 6; 5 A. L. R. 256; *Millett v. Pearson,* 143 Minn. 187, 173 N. W. 411; *Somers v. Germania Nat. Bank,* 152 Wis. 210, 138 N. W. 713; *Oconto Elec. Co. v. Peoples L. & M. Co.* 165 Wis. 467, 161 N. W. 789.

The record is barren of any evidence from which an intent on the part of Onsager may be inferred that he intended to permanently abandon the use of the building as a garage. On the contrary, the evidence is clear that he had no such intention, but that his consent to the city's occupancy of the building during the period from his return from the army to the time of his repossession was due entirely to a consideration for the convenience of the city. The defendant *Murray* is using the building for the purpose for which it was erected and to which it is adapted and for which it has always been used, except the interim between the time of Onsager's induction into the army in February, 1918, and his resumption of possession in April of 1921. The use of the building during this interim cannot be construed as an abandonment of the use of the building for the purposes of a garage. The lower court properly disposed of the case.

*By the Court.*—Judgment affirmed.