COURT OF APPEALS
DECISION
DATED AND FILED

July 20, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.        **2022AP1201**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV137**

**IN COURT OF APPEALS
DISTRICT IV**

---

TRACY J. SELK,

    PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

V.

GREG E. HERRICK,

    DEFENDANT-APPELLANT-CROSS-RESPONDENT.

---

APPEAL and CROSS-APPEAL from a judgment and an order of the circuit court for Clark County: THOMAS W. CLARK, Judge. *Affirmed in part; reversed in part and cause remanded*.

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Greg E. Herrick appeals a judgment and order of the Clark County Circuit Court that awarded compensatory and punitive damages to both Herrick and Tracy J. Selk.  Selk cross-appeals the court's judgment and order.  For the reasons that follow, we reverse the court's award of punitive damages against Herrick and remand for the circuit court to amend the judgment, but we affirm the court's judgment and order in all other respects.

## BACKGROUND

¶2     There is no dispute as to the following material facts.

¶3     Herrick and Selk were in a romantic, non-marital relationship beginning in 2015.  During their relationship, Herrick purchased property jointly with Selk and allowed Selk to use some of his other personal property.  In 2017, Herrick and Selk ended their relationship.

¶4     In 2019, Selk filed a lawsuit against Herrick based on a claim for common law conversion on the ground that Herrick refused to return six of Selk's horses after the end of the relationship.[1]  In his answer to the complaint, Herrick asserted multiple affirmative defenses, including that Selk abandoned her horses and failed to mitigate her damages.  Herrick asserted a number of counterclaims against Selk, including a claim for conversion of a loader tractor that he allowed Selk to use as well as claims for unjust enrichment and quantum meruit concerning other personal property.

---

[1] Selk also asserted claims for theft under WIS. STAT. § 895.446 (2021-22) and intentional infliction of emotional distress.  Because those claims are not relevant to the issues in this appeal, we do not address those claims in this opinion.  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶5      After a four-day bench trial, the circuit court set forth its findings of fact and its judgment.  With respect to Selk's claims, the court concluded that Herrick converted Selk's horses and ordered Herrick to pay $5,500 in compensatory damages and $20,000 in punitive damages.  With respect to Herrick's counterclaims, the court concluded that Selk converted Herrick's tractor and ordered Selk to pay $12,225 in compensatory damages and $5,000 in punitive damages.  The court dismissed the rest of the parties' claims.  Accordingly, the court ordered that Herrick pay $8,275 in net damages to Selk.

¶6      Herrick appeals the court's judgment and order.  Selk cross-appeals the court's judgment and order.  However, Selk failed to file a brief in her cross-appeal or a response brief in Herrick's appeal.  As a result, this court issued a warning to Selk that her failure to file briefs could result in summary disposition or summary reversal of the circuit court's judgment and order.  Selk again failed to provide this court with any brief or other explanation as to her failure to file briefs.  Therefore, the case was submitted to this court based solely on Herrick's brief and the record.

¶7      Additional facts are mentioned in the following discussion.

### DISCUSSION

### I.  Standard of Review and Governing Principles.

¶8      This case requires that we review the factual findings of the circuit court.  We will not set aside the court's findings of fact unless those are clearly erroneous.  WIS. STAT. § 805.17(2).  "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'"  ***Phelps v.***

*Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted).

¶9      Where, as here, the circuit court acts as the finder of fact, "it is the ultimate arbiter of the credibility of the witnesses and of the weight to be given to each witness's testimony." *Lessor v. Wangelin*, 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998); *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979) ("[W]hen the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses."); WIS. STAT. § 805.17(2) ("[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). "The trier of fact is in a far better position than an appellate court to make this determination, because it has the opportunity to observe the witnesses and their demeanor on the witness stand." *Lessor*, 221 Wis. 2d at 665. As with the court's other findings of fact, we will not disturb the court's credibility determinations unless those are clearly erroneous. *Id.* at 665-66.

¶10      This case also requires us to determine whether the court applied the proper standards of law when ruling on the parties' claims. Whether the circuit court applied the correct legal standard is a question of law that we review independently. *Gallagher v. Grant-Lafayette Elec. Co-op.*, 2001 WI App 276, ¶15, 249 Wis. 2d 115, 637 N.W.2d 80.

## II.  Selk's Failure to File Briefs.

¶11      As noted, Selk filed a notice of cross-appeal but failed to file a brief as required under WIS. STAT. § 809.19(1). If an appellant fails to file a brief, this court may, in its discretion, dismiss the appeal. WIS. STAT. § 809.83(2) ("Failure of a person to comply with a court order or with a requirement of these rules … is

4

grounds for dismissal of the appeal."); *State v. Smythe*, 225 Wis. 2d 456, 462, 592 N.W.2d 628 (1999) (holding that this court's dismissal of appeal for failure to file a brief is a discretionary decision). Here, this court warned Selk of the potential consequences of her failure to file a brief in her cross-appeal. Because Selk failed to file a brief or otherwise provide an explanation for her failure to do so, we conclude that Selk has abandoned her cross-appeal. Therefore, we dismiss Selk's cross-appeal.

¶12　Selk has also failed to file a response brief in Herrick's appeal pursuant to WIS. STAT. § 809.19(3). If a respondent fails to file a brief, this court may, in its discretion, summarily reverse the circuit court. WIS. STAT. § 809.83(2); *Raz v. Brown*, 2003 WI 29, ¶14, 260 Wis. 2d 614, 660 N.W.2d 647 (holding that this court's imposition of summary reversal as a sanction for failure to file a brief is a discretionary decision). This court warned Selk of the consequences of failing to file a response brief but Selk failed to file a brief or provide any explanation for her failure to do so. Nevertheless, we decline to summarily reverse the order or judgment of the circuit court because the court's ruling was based in part on findings of fact and credibility determinations, and we may not set those aside unless those are clearly erroneous. *See State v. Ehlinger*, No. 2015AP1428, unpublished slip op. ¶4 n.5 (WI App June 21, 2016) (declining to summarily reverse as a sanction for failure to file a response brief because the circuit court's findings of fact and credibility determinations were not clearly erroneous).[2] Therefore, we address the merits of Herrick's appeal without the benefit of a response brief from Selk.

---

[2] We cite this authored, unpublished, one-judge opinion for its persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

### III. Selk's Conversion Claim.

¶13    Selk's complaint alleged that, while she was in a relationship with Herrick, she brought her two horses, named Clark and Barbie, to be boarded at Herrick's farm. According to Selk, when she and Herrick ended their relationship, Herrick refused to return the horses and threatened to have anybody arrested who attempted to retrieve the horses. After the end of the relationship between Selk and Herrick, while the horses were still at Herrick's farm, Clark and Barbie had four foals. Clark and Barbie eventually died while at Herrick's farm. Based on these allegations, Selk asserted a claim of common law conversion of Clark, Barbie, and the four foals. The court concluded that Herrick converted those six horses and ordered Herrick to pay a total of $25,500 in compensatory and punitive damages.

¶14    On appeal, Herrick argues that the circuit court erroneously entered judgment for Selk on her conversion claim for the following reasons: (1) Herrick did not convert Selk's horses because Selk abandoned them at his farm; (2) the court applied the wrong legal standard in calculating compensatory damages; and (3) the court misapplied the law when imposing punitive damages. We address each argument in turn.

### A. Abandonment.

¶15    "The elements of conversion are: (1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property." ***H.A. Friend & Co. v. Professional Stationery, Inc.***, 2006 WI App 141, ¶11, 294 Wis. 2d 754, 720 N.W.2d 96. "The fact that the plaintiff abandoned any property before the defendant took possession of it is a complete defense to an action for

conversion." 18 AM. JUR. 2D *Conversion* § 102 (2023). "[I]n order to constitute an abandonment of property there must be a relinquishment coupled with an intent to part with it permanently." **State v. Murray**, 195 Wis. 657, 659, 219 N.W. 271 (1928); *see also* **Tyler v. Hennepin Cnty.**, 143 S. Ct. 1369, 1380 (2023) ("Abandonment requires the 'surrender or relinquishment or disclaimer of' all rights in the property." (citation omitted)).

¶16 In ruling that Herrick converted Selk's horses, the circuit court determined that Selk did not abandon her horses at Herrick's farm. The court based this determination on the following testimony and evidence that was presented at trial. Selk testified that she had asked for the return of the horses immediately after she and Herrick ended their relationship in spring 2017, but Herrick refused to return them. Selk's son, Thomas, also testified that he went to Herrick's farm in winter 2017 to retrieve cattle belonging to Selk. Thomas testified that he sent a text message to Herrick at that time, stating that he also wanted to retrieve Selk's horses. According to Thomas, Herrick helped load Selk's cattle for return, but refused to allow Thomas to take Selk's horses.

¶17 Selk admitted that Herrick wrote a letter to her in February 2018 advising her that, if she did not retrieve her horses, he would consider them abandoned. Selk testified that she called and sent a text message to Herrick in response to that letter, but Herrick told her that she would be trespassing if she came to retrieve the horses. Selk also testified that she tried to retrieve the horses after Herrick's letter, but was unable to do so because of the weather conditions. Selk submitted as evidence an email to Herrick that corroborated her statements that she tried to contact him about returning the horses. Selk also pointed to the testimony of an individual named Gilbert Voelker who stated that he saw a copy of a text message that Selk sent to Herrick requesting the return of the horses.

Lastly, Selk testified that she sneaked onto Herrick's farm and threw corn onto his property to feed Clark. In response to that action, Herrick filed a complaint with Clark County law enforcement.

¶18     For his part, Herrick testified that Selk never asked for the return of her horses. Herrick confirmed that Thomas came to his farm to retrieve Selk's cattle, but he denied that Thomas requested Selk's horses at that time. Herrick also confirmed that he wrote a letter to Selk in February 2018, but neither Selk nor Thomas ever contacted him about the horses after he wrote that letter. Herrick also denied telling Selk that she would be trespassing if she came to retrieve the horses.

¶19     After describing the foregoing testimony and evidence, the court determined that Herrick converted Selk's horses. The court explained that it "[found] the testimony of Selk to be credible that Herrick refused to return the horses and, indeed, threatened to arrest her if she came to pick up the horse[s]." The court also denied Herrick's abandonment defense, explaining that "credible testimony was presented that [Selk] had no intention of abandoning these horses" and that Selk "made credible efforts to recover her horses shortly after the romantic relationship ended, and Herrick prevented her from recovering them."

¶20     On appeal, Herrick argues that the court's finding that Selk did not abandon the horses was clearly erroneous because it "ignored relevant facts and disregarded Herrick's testimony with respect to Selk's abandonment of the horses." Specifically, Herrick argues that the following evidence undermines the court's abandonment ruling: Herrick's testimony that Selk refused to make arrangements to remove the horses and never requested the return of the horses; evidence that Selk did not have adequate resources to care for the horses; the

inference that Selk could have taken the horses when she retrieved her cattle from Herrick's farm or when she went to Herrick's farm to feed corn to Clark; the weather records, which undermine Selk's concerns about retrieving the horses; and Herrick's position that Selk did not "fear" Herrick's status as Clark County Sheriff because he retired from that office before Selk filed her lawsuit.

¶21    We are not persuaded.  As explained above, in situations where there is conflicting testimony, as here, the circuit court is "the ultimate arbiter of the credibility of the witnesses." *Cogswell*, 87 Wis. 2d at 250.  We will not disturb the court's credibility determinations unless those are clearly erroneous. *Lessor*, 221 Wis. 2d at 665.  In its ruling, the court described at great length the evidence presented by the parties and the conflicting testimony of Herrick and Selk, and it found that Selk's testimony was more credible than Herrick's testimony.  Herrick has not demonstrated that this credibility determination is "against the great weight and clear preponderance of the evidence." *See Phelps*, 319 Wis. 2d 1, ¶39.  Therefore, the court's finding that Selk did not abandon her horses is not clearly erroneous.

¶22    Herrick also argues that the court applied an "overly conservative definition of abandonment."  In its ruling, the court cited *State ex rel. Pamperin v. Oconto Elec. Co.*, 165 Wis. 467, 480, 161 N.W. 789 (1917), for the proposition that "[a]bandonment means an intentional or voluntary surrender."  The court also cited a treatise for the proposition that abandonment "turns on the fact of intent to be determined by the jury in the light of all the circumstances.  Without the intent there can be no abandonment."  According to Herrick, these legal standards are not entirely accurate because the intent to abandon property can also be inferred from the surrounding circumstances and "can be shown by acts and conduct clearly inconsistent with any intention to retain and continue the use or ownership

9

of the property." We reject this argument. Even though the court did not explicitly describe in its ruling the legal standard identified by Herrick, the court's oral ruling indicates that the court considered the conduct of the parties and the surrounding circumstances in finding that Selk did not intend to abandon the horses. Therefore, we conclude that the court applied the proper legal standard in determining abandonment.

¶23 Finally, Herrick argues that he was entitled to presume that Selk abandoned her horses pursuant to WIS. STAT. § 704.05. This statute states, in relevant part: "If a tenant removes from or is evicted from the premises and leaves personal property, the landlord may presume, in the absence of a written agreement between the landlord and the tenant to the contrary, that the tenant has abandoned the personal property." Sec. 704.05(5)(a)1. This argument fails because Herrick does not point to any evidence in the record to support his assertion that he and Selk had a landlord-tenant relationship. We will not search the record to support this argument. *See Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990) ("[I]t is not the duty of this court to sift and glean the record *in extenso* to find facts which will support an [argument].").

¶24 In sum, we conclude that the court properly determined that Selk did not abandon her horses at Herrick's farm.

### B. Compensatory Damages.

¶25 Next, Herrick argues that the court's award of compensatory damages for Selk's conversion claim was not supported by the evidence. "Determining damages is within the [circuit] court's discretion." *J.K. v. Peters*, 2011 WI App 149, ¶32, 337 Wis. 2d 504, 808 N.W.2d 141. As with other factual findings, we will not reverse the court's findings of fact on damages unless those

are clearly erroneous. *Id.*; *see also* **Selmer Co. v. Rinn**, 2010 WI App 106, ¶28, 328 Wis. 2d 263, 789 N.W.2d 621 ("It is not [the reviewing court's] purpose to determine whether damage awards are high or low, nor to substitute [its] judgment for that of the jury or the trial court but rather to determine whether the award is within reasonable limits."). Whether the circuit court applied a proper legal standard in determining damages is a question of law which we review de novo. **J.K.**, 337 Wis. 2d 504, ¶32.

¶26 As noted, the court awarded Selk $5,500 in compensatory damages for Herrick's conversion of Selk's horses. The court found that the most credible valuation of Clark was provided by Randy Reineck, a long-time horse auctioneer. Reineck testified that Clark had no intrinsic value and only had value as a "stud horse." For that reason, Reineck opined that Clark had a value of $2,000 at the time he was converted. The court also found that the most credible valuations of Barbie and the four foals were provided by Leon Horst, another long-time horse auctioneer. Horst testified that Barbie had a value of $500 and each of the four foals had a value of $750.

¶27 Herrick argues that the court's findings concerning damages for Clark and Barbie were erroneous because Clark and Barbie had no economic value while they were in Selk's care before they were boarded at Herrick's farm. As explained, the court's findings concerning damages for Clark and Barbie were based on the credibility of Reineck and Horst. Herrick has not demonstrated that these credibility determinations are against the great weight and clear preponderance of the evidence. *See* **Phelps**, 319 Wis. 2d 1, ¶39. Thus, we will not disturb the court's findings with respect to compensatory damages.

¶28 Herrick also argues that the court erroneously awarded compensatory damages for his conversion of Selk's horses because Selk failed to mitigate damages. According to Herrick, Selk had multiple opportunities to retrieve her horses from his farm but failed to do so. We are not persuaded. As explained above, the court found that Selk credibly testified that she tried to retrieve her horses from Herrick's farm, but Herrick prevented her from doing so. For that reason, the court found that Selk adequately mitigated her damages: "The Court feels that with the attempts to recover the horses, [Selk] did what she could to minimize the damages in this case." Because Herrick has not demonstrated that the court's credibility determination is against the great weight and clear preponderance of the evidence, *see id.*, we will not disturb the court's finding that Selk adequately mitigated damages.

¶29 Lastly, Herrick argues that the court's findings of compensatory damages were "economically wasteful" because Clark had no value at the time of his death. Herrick points to Reineck's testimony that, at the end of Clark's life, Clark was likely suffering from testicular cancer and therefore had no value as a stud horse. We reject this argument. "The general rule regarding damages for conversion is that 'the plaintiff may recover the value of the property at the time of the conversion plus interest to the date of the trial.'" *Midwestern Helicopter, LLC v. Coolbaugh*, 2013 WI App 126, ¶9, 351 Wis. 2d 211, 839 N.W.2d 167 (quoting *Metropolitan Sav. & Loan Ass'n v. Zuelke's, Inc.*, 46 Wis. 2d 568, 577, 175 N.W.2d 634 (1970)). Here, the court found that the damages for the conversion of Selk's horses was based on their value at the time they were converted—*i.e.*, when Herrick interfered with Selk's property rights by withholding the horses—not at the time of their deaths. Therefore, we conclude that the court properly awarded compensatory damages for Herrick's conversion of the horses.

## C. Punitive Damages.

¶30    Herrick argues that the court's award of punitive damages for the conversion of Selk's horses was "improper" and "unwarranted."  Where the court acts as the trier of fact, the decision to award punitive damages is within the court's discretion.  *Gianoli v. Pfleiderer*, 209 Wis. 2d 509, 531, 563 N.W.2d 562 (Ct. App. 1997).  "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record."  *Weborg v. Jenny*, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191.  Whether the circuit court utilized the proper legal standard is a question of law that we review de novo.  *Ulrich v. Zemke*, 2002 WI App 246, ¶8, 258 Wis. 2d 180, 654 N.W.2d 458.

¶31    Punitive damages are governed by WIS. STAT. § 895.043.  Under this statute, punitive damages may be awarded "if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff."  Sec. 895.043(3).  An act is "malicious" if it is "the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended."  *Strenke v. Hogner*, 2005 WI 25, ¶26, 279 Wis. 2d 52, 694 N.W.2d 296.

¶32    Important to our analysis, "punitive damages are not available where there has been no 'award' of actual damages."  *Tucker v. Marcus*, 142 Wis. 2d 425, 439, 418 N.W.2d 818 (1988).  "An 'award' represents a remedy recoverable in accordance with an order for judgment.  It is not enough that actual damages may have been 'suffered' or 'sustained' in order for punitive damages to be awarded."  *Id.*; *see also* *Kehl v. Economy Fire & Cas. Co.*, 147 Wis. 2d 531, 534, 433 N.W.2d 279 (Ct. App. 1988) ("Juries are not given license to roam the caverns

of their consciences to punish conduct they deem despicable unless a plaintiff can prove that he or she has suffered some actual damage as a result of the conduct."). For instance, in *Kehl*, this court held that a drunk driver's decision to flee the scene of an accident was not a proper basis for punitive damages because that decision was "separate from the negligence causing the collision." *Kehl*, 147 Wis. 2d at 536. Similarly, in *Henrikson v. Strapon*, 2008 WI App 145, 314 Wis. 2d 225, 758 N.W.2d 205, this court held that a drunk driver's decision to flee the scene of an accident could not support punitive damages because there was no evidence that the driver's decision to flee "caused an injury to [the victim] or aggravated any injury he received from being hit by [the driver's] car and thrown into the street." *Henrikson*, 314 Wis. 2d 225, ¶34 (citing *Kehl*, 147 Wis. 2d at 536).

¶33 In the present case, the circuit court awarded Selk $20,000 in punitive damages for Herrick's conversion of her horses. The basis for the court's conversion determination was Herrick's refusal to return the horses upon Selk's request. However, that act did not form the basis for the court's award of punitive damages. Rather, the court explained that its award of punitive damages was based on other acts by Herrick with respect to Clark's and Barbie's later deaths:

> In considering the evidence in this matter and the grievousness of the acts of Mr. Herrick when the degree of malice involved and particularly the hiding [of] the body of Clark for an ex[t]ended period of time, and the revelation of killing Barbie only at the end of the trial with no explanation why, the Court awards $20,000 in punitive damages.

The only two bases that the court provided for its punitive damages decision—*i.e.*, Herrick's concealment of Clark's body and Herrick's decision to conceal the fact of Barbie's death until the end of trial—occurred well after Herrick's conversion

of Selk's horses and were not a basis for the court's ruling on conversion. Like the drunk drivers' decisions to flee the scene of the accidents in *Kehl* and *Henrikson*, Herrick's purportedly malicious acts were separate from his conversion of Selk's horses and did not cause the injury for which the court awarded compensatory damages. Moreover, because Selk did not file a response brief in this appeal, Selk has effectively conceded Herrick's assertion that the punitive damages award was improper. *See State ex rel. Blackdeer by Blackdeer v. Township of Levis*, 176 Wis. 2d 252, 260, 500 N.W.2d 339 (Ct. App. 1993) ("Failure to file a respondent's brief tacitly concedes that the trial court erred."). Therefore, we conclude that the court applied an improper legal standard in awarding $20,000 in punitive damages for Herrick's conversion of Selk's horses. Accordingly, we reverse the punitive damages award.

## IV.  Herrick's Counterclaims.

¶34     Herrick also appeals the circuit court's denial of his counterclaims against Selk.  In those counterclaims, Herrick argued that he is entitled to compensation from Selk for the following reasons:  (1) Herrick provided care for Selk's horses while they were at his farm; (2) Selk did not return Herrick's loader tractor after their relationship ended; (3) Selk did not allow Herrick to use a jointly purchased plow truck; (4) Selk did not allow Herrick to use a jointly purchased cattle chute; and (5) Herrick paid one year of Selk's real estate taxes, and she did not repay him.  As relevant to this appeal, Herrick asserted claims for unjust

enrichment and quantum meruit based on these allegations.[3]  We begin by setting forth the governing principles and standard of review regarding unjust enrichment and quantum meruit.

### A.  Governing Principles and Standard of Review.

¶35    Though conceptually similar, unjust enrichment and quantum meruit are distinct causes of action.  *Ramsey v. Ellis*, 168 Wis. 2d 779, 785, 484 N.W.2d 331 (1992).  "While recovery for unjust enrichment is based upon the inequity of allowing the defendant to retain a benefit without paying for it, recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered."  *Id.*

¶36    An unjust enrichment action requires proof of three elements:  "(1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit."  *Ulrich*, 258 Wis. 2d 180, ¶10.  A circuit court's decision to grant or deny equitable relief in an action for unjust enrichment is discretionary.  *Id.*, ¶8.  "Discretionary decisions are sustained if the circuit court examined the relevant facts, applied a proper standard of law, and using a rational process, reached a conclusion that a reasonable judge could reach."  *Id.*  Damages in an

---

[3] Herrick also asserted claims for breach of contract, intentional interference with a contractual relationship, theft, fraud, and declaratory judgment based on these allegations. Additionally, Herrick alleged that he loaned a cattle loading chute, a wood hauling wagon, and a picnic table to Selk during their relationship and asserted claims based on those allegations. Because Herrick does not mention any of these claims on appeal, we do not address those in this opinion.

unjust enrichment claim are measured by the benefit conferred upon the defendant. *Ramsey*, 168 Wis. 2d at 785.

¶37    To establish an implied contract under a theory of quantum meruit, "the plaintiff must show that the defendant requested the services and that the plaintiff expected reasonable compensation." *Murray v. City of Milwaukee*, 2002 WI App 62, ¶17, 252 Wis. 2d 613, 642 N.W.2d 541.  Damages in a quantum meruit claim are measured by the reasonable value of the plaintiff's services. *Ramsey*, 168 Wis. 2d at 785.

### B. Horse Care.

¶38    Herrick alleged that Selk brought two of her horses to his farm while he and Selk were in a relationship but, after their relationship ended, Selk refused to retrieve those horses.  Herrick also alleged that he spent money on food, boarding, and other care for the horses while they were at his farm.  Based on these allegations, Herrick asserted that he was entitled to compensation under the theories of unjust enrichment and quantum meruit.  The court denied these claims and found that it would be "inequitable" for Herrick to recover his expenses because "[t]he benefit conferred upon Selk for the care of the horses by Herrick could have been easily avoided if Herrick had returned the horses on demand."

¶39    On appeal, Herrick argues that the court erroneously denied his unjust enrichment claim because all of the elements of unjust enrichment were satisfied.  Specifically, Herrick argues that he conferred upon Selk the "benefit" of taking care of her horses and that it would be inequitable for Selk to "retain" that benefit without paying him.  We disagree.  The court's oral ruling demonstrates that the court set forth the proper legal standard for unjust enrichment and examined the relevant facts regarding Herrick's alleged care for Selk's horses.

17

The court also determined that Herrick did not meet all the elements of unjust enrichment because it found that it would be inequitable for Herrick to recover his expenses for horse care. This determination shows that the court used a rational process and reached a conclusion that a reasonable judge could reach. *See Ulrich*, 258 Wis. 2d 180, ¶8. Therefore, we conclude that the court properly exercised its discretion in denying Herrick's unjust enrichment claim for horse care.

¶40 Herrick also argues that the court clearly erred in finding that he could have avoided incurring horse care expenses by returning the horses upon Selk's demand. Herrick points out that he alleged in his unjust enrichment claim that he incurred horse care expenses beginning in Spring 2016, nearly one year before Selk first demanded the return of her horses. This argument fails because Herrick does not point to any evidence in the record indicating that he incurred horse care expenses prior to Selk's first demand for the return of the horses.[4] As a result, Herrick has not demonstrated that the court's finding was "against the great weight and clear preponderance of the evidence." *See Phelps*, 319 Wis. 2d 1. Therefore, we conclude that the court properly rejected Herrick's unjust enrichment claim regarding horse care.

¶41 Herrick also argues that the court erroneously denied his quantum meruit claim for horse care services. According to Herrick, he is entitled to reasonable compensation for the value of the services he provided to Selk. Like

---

[4] Herrick points to a series of invoices that he gave to Selk as evidence of the expenses he incurred while caring for Selk's horses. None of those invoices mentions horse care expenses, except for one that charged Selk $150 for feed for three horses. However, that invoice was dated November 2017, many months after the date that the court found that Selk first asked Herrick to return her horses and Herrick refused to do so. As a result, this invoice does not affect our conclusion that the court properly exercised its discretion in denying Herrick's unjust enrichment claim for horse care expenses.

Herrick's unjust enrichment claim, this argument fails because the court found that Herrick refused to return the horses on Selk's request. This finding contradicts Herrick's assertion that he and Selk had an "implied contract" for horse care services because it demonstrates that Selk never requested horse care services from Herrick. *See Murray*, 252 Wis. 2d 613, ¶17. Therefore, we conclude that the court properly denied Herrick's quantum meruit claim.

## B. Loader Tractor.

¶42 Next, Herrick alleged that he loaned his loader tractor to Selk two months after they ended their relationship so that she could feed her cattle. Herrick also alleged that he demanded the return of the tractor, but Selk refused and prevented him from retrieving it. According to Herrick, Selk took the tractor to Tennessee and traded it in for a different tractor. Based on these allegations, Herrick asserted a claim for conversion for the value of the tractor and unjust enrichment for his loss of use of the tractor. On Herrick's conversion claim, the court found that the transfer of the tractor was "a revocable gift with a conditional delivery," not a "completed gift to Selk." The court found that Herrick credibly testified that he demanded the return of the tractor but Selk refused to do so. Accordingly, the court granted Herrick's claim for conversion and awarded Herrick $12,225 in compensatory damages for the value of the tractor and $5,000 in punitive damages. On Herrick's unjust enrichment claim, the court found that Herrick conferred a benefit upon Selk and Selk was aware of that benefit. However, the court denied Herrick's claim because the only evidentiary support he provided for his claimed damages for loss of use of the tractor were "purported invoices made up by Herrick." The court also explained that Selk was not obligated to pay the amounts on Herrick's invoices because there was no contract for her use of the tractor.

¶43     On appeal, Herrick argues that the court erroneously denied his unjust enrichment claim because his transfer of the tractor to Selk was a loan, not a gift. This argument fails because the court explicitly found that the transfer of the tractor was not a "completed gift" to Selk. Indeed, the court found that Herrick provided credible testimony that he never intended for Selk to keep the tractor because he knew that he would eventually need the tractor back. As a result, we conclude there was no error in the circuit court's analysis in this regard.

¶44     Herrick also argues that the court did not apply the proper legal standard for unjust enrichment because it based its decision on the lack of a written contract or agreement between him and Selk. We are not persuaded. Although Herrick is correct that a written contract or agreement is not an element of unjust enrichment, Herrick mischaracterizes the court's decision. Contrary to Herrick's argument, the primary basis for the court's denial of his unjust enrichment claim was the lack of evidentiary support for the $8,650 that he invoiced Selk for his loss of use of the tractor, which Herrick asserts is the value of the benefit conferred upon Selk. On appeal, Herrick does not point to any evidence in the record to undermine the circuit court's finding that Herrick failed to establish that the invoice he sent to Selk was the value of the benefit he allegedly conferred to Selk. As a result, Herrick has not demonstrated that the court's finding was against the great weight and clear preponderance of the evidence. *See **Phelps***, 319 Wis. 2d 1, ¶39. Therefore, we affirm the court's denial of Herrick's unjust enrichment claim regarding the loader tractor.

## C.  Plow Truck.

¶45     Next, Herrick alleged that he and Selk jointly purchased a plow truck during their relationship, and the plow truck was kept at Selk's residence.

Herrick also alleged that he requested use of the plow truck after their relationship ended, but Selk refused. Based on these allegations, Herrick asserted a claim for unjust enrichment and requested damages for loss of use of the plow truck.[5] The court denied Herrick's unjust enrichment claim for two reasons. First, the court held that Herrick did not confer any benefit on Selk because they each owned 50% of the plow truck and were free to use the plow truck whenever needed. The court also found that Herrick and Selk had no rental agreement or contract as to the use of the plow truck. Second, the court held that Herrick was not entitled to damages for loss of use of the plow truck because Herrick failed to provide any evidentiary support for the amount he invoiced Selk for his loss of use of the plow truck.

¶46    On appeal, Herrick argues that the court erred because it based its ruling on the lack of a written contract or rental agreement for use of the plow truck. Again, Herrick mischaracterizes the court's ruling. Although the court mentioned the lack of a written contract or rental agreement in its findings, the primary basis for the court's ruling was its determination that Herrick did not confer any benefit on Selk because Selk was an equal co-owner of the plow truck and was free to use the plow truck at any time. Herrick has not demonstrated that this finding was against the great weight and clear preponderance of the evidence. *See id.* Moreover, Herrick ignores the court's finding that he failed to provide evidentiary support for the claimed damages. Herrick does not point to evidence in the record to undermine this finding, such as evidence of costs of Selk renting or obtaining a different plow truck or any other monetary benefit allegedly

---

[5] It is not clear that Herrick's claimed damages for loss of use of the jointly owned plow truck and the cattle chute discussed in the next section are recoverable based on an unjust enrichment theory. However, we do not address this because we reject Herrick's damages argument on other ground.

conferred upon Selk. Therefore, we conclude that the court properly denied Herrick's unjust enrichment claim regarding the plow truck.

### D. Cattle Chute.

¶47 Next, Herrick alleged that he and Selk jointly purchased a cattle chute during their relationship and kept the cattle chute at Selk's residence. Herrick alleged that he requested use of the cattle chute after their relationship ended, but Selk refused. Based on these allegations, Herrick asserted a claim for unjust enrichment and requested damages for loss of use of the cattle chute. The court denied this claim for the same reasons it denied Herrick's claim regarding the plow truck. As with the plow truck, the court found that Herrick did not confer any benefit on Selk because they were equal co-owners of the cattle chute and were free to use it whenever needed. The court also found that Herrick and Selk had no rental agreement or contract as to the use of the cattle chute. Second, the court held that Herrick was not entitled to damages for loss of use of the cattle chute because Herrick did not provide any evidentiary support for the amount he invoiced Selk for his loss of use of the cattle chute.

¶48 On appeal, Herrick argues that the court erred because it based its ruling on the lack of a written contract or rental agreement for use of the plow truck. As with the court's ruling regarding the plow truck, Herrick mischaracterizes the court's ruling regarding the cattle chute. Although the court mentioned the lack of a written contract or rental agreement in its findings, the primary basis for the court's ruling was its determination that Herrick did not confer any benefit on Selk because Selk was an equal co-owner of the cattle chute and was free to use the cattle chute at any time. Herrick has not demonstrated that this finding was against the great weight and clear preponderance of the evidence.

22

*See id.* Additionally, Herrick ignores the court's finding that he failed to provide evidentiary support for his claimed damages. Herrick does not point to evidence in the record to undermine this finding, such as evidence of costs of renting or obtaining a different cattle chute, to establish the monetary benefit purportedly conferred upon Selk. Therefore, we conclude that the court properly denied Herrick's unjust enrichment claim regarding the cattle chute.

### E. Payment of Real Estate Taxes.

¶49 Lastly, Herrick alleged that he paid Selk's real estate taxes in 2017. According to Herrick, Selk promised to repay him with proceeds from the sale of her cattle, but she never did so. Based on these allegations, Herrick asserted counterclaims for unjust enrichment and quantum meruit. The court denied Herrick's counterclaims because it found that Herrick's payment of those taxes was a gift to Selk, not a loan. Specifically, the court found that Selk's testimony on this issue was more credible because the payment occurred while Herrick and Selk were in a relationship and because Herrick was spending time at Selk's property. The court also found that there was no written contract or loan agreement for repayment of the money.

¶50 On appeal, Herrick argues that the court erroneously denied his unjust enrichment claim because it based its ruling on the lack of contract or loan agreement. This argument fails because the court's ruling was primarily based on its finding that Selk credibly testified that the payment was a gift. Based on this finding, it necessarily follows that the court determined that it would not be inequitable for Selk to retain that money. Because Herrick does not point to any evidence in the record to undermine the court's finding regarding the court's credibility determination, Herrick has not demonstrated that this finding is against

23

the great weight and clear preponderance of the evidence. *See id.* Therefore, we affirm the court's denial of Herrick's unjust enrichment claim regarding the payment of Selk's taxes.

¶51 Herrick also argues on appeal that the court erroneously denied his quantum meruit claim because it stated that Herrick only asserted a claim for breach of contract regarding the taxes, not quantum meruit. We disagree. Although the court did not explicitly mention quantum meruit in its decision regarding the payment of taxes, the court's finding that Herrick's payment was a gift to Selk defeats Herrick's quantum meruit claim. In other words, because the court found that Herrick's payment was a gift to Selk, it necessarily follows that there was no implied contract for Selk to repay that money as would be necessary to prevail on a quantum meruit claim. *See Ramsey*, 168 Wis. 2d at 784. Because Herrick has not demonstrated that the court's finding is against the great weight and clear preponderance of the evidence, *see Phelps*, 319 Wis. 2d 1, ¶39, we conclude that the court properly denied Herrick's quantum meruit claim regarding the payment of taxes.

## CONCLUSION

¶52 For the foregoing reasons, we reverse the circuit court's award of punitive damages against Herrick and remand for the circuit court to amend the judgment, but we affirm the judgment and order of the circuit court in all other respects.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.